[Cite as *State v. Beagle*, 2017-Ohio-7576.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 17AP-180 |
| v. | : | (C.P.C. No. 16CR-1055) |
| Gary Beagle, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 12, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

**On brief:** *Todd W. Barstow*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Gary Beagle, appeals a February 6, 2017 judgment of the Franklin County Court of Common Pleas convicting Beagle of three counts of rape, designating him a sexually violent predator, and sentencing him to a total of 30 years to life in prison. Upon review of Beagle's appeal, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On February 25, 2016, a Franklin County Grand Jury indicted Beagle for one count of kidnapping and three counts of rape associated with the forcible vaginal and anal rape of victim I.R. (Feb. 25, 2016 Indictment.) All four counts contained sexually violent predator specifications under R.C. 2941.148. *Id.* Beagle waived his right to a jury trial on the specifications and elected that the trial judge determine these allegations. (Jan. 24, 2017 Jury Waiver.) The evidence underlying the counts was presented to a jury as part of the State of Ohio's case to prosecute the underlying offense.

{¶ 3} After jury selection on January 24, 2017, the presentation of evidence at trial began on January 25. At trial, six witnesses testified: the alleged victim (I.R.), a passing motorist who was waved down by I.R. and telephoned the police, an officer who responded to the rape scene, a detective who investigated the case, a nurse who examined I.R. at the hospital after the rape, and a police lab scientist who examined the DNA evidence obtained from a medical examination of I.R.

{¶ 4} The motorist testified that on August 18, 2015, he was driving on McKinley Avenue when he saw a woman yelling at passing cars. (Jan. 25, 2017 Tr. Vol. 1 at 100, filed May 4, 2017.) He had driven a short distance past her when he discerned that she was yelling for help. (Tr. Vol. 1 at 93-94.) He stopped and, at her request, telephoned the police. *Id.* He testified that she said she had been raped. *Id.* At trial, the State played a recording of his 911 call in which he relayed to the 911 operator what I.R. was saying. (State's Ex. E.) He conveyed that I.R. had been called a whore, grabbed by the hair, pulled behind a building, and raped. (State's Ex. E at 0:42-0:57.) I.R.'s alleged assailant, who was driving a car, had stopped near I.R., a pedestrian, and asked her for directions; he then jumped out his car and grabbed her hair. *Id.* at 1:15-1:22. The attacker was driving a gold compact car. *Id.* at 1:33-1:43. He was described as white and about 30 or 40 years old. *Id.* at 2:10-2:25. When the 911 operator inquired if I.R. was injured, I.R. said that her assailant had an "orgasm" in her and she wanted it out of her. *Id.* at 2:56-3:12. The motorist was not permitted to testify as to whether he thought I.R.'s account was truthful but was permitted to note that although I.R. was gasping and crying, there were no tears, which he found to be unusual. (Tr. Vol. 1 at 99-101.) He also testified that she did not appear disheveled and her pants were fully on, but she was barefoot. *Id.* at 97-98.

{¶ 5} I.R. testified that she was 30 at the time of trial and had 8 children, but she had custody of none of them. *Id.* at 33, 76-77. She admitted that she was on probation for burglary at the time of the 2017 trial. *Id.* at 34-35. She stated that she was no longer using drugs at the time of trial. *Id.* at 35. But she testified that she was addicted to cocaine and heroin at the time of the rape and had adopted the practice of stealing in order to afford drugs, which she was then using at a rate of $100 to $200 worth per day. *Id.* at 35, 39-40, 77-79. She admitted that she had used drugs on the day of the rape and would have needed

more later. *Id.* at 41, 85-86. But she repeatedly denied ever having worked as a prostitute, even to afford drugs. *Id.* at 61, 82-83.

{¶ 6}  I.R. recounted that on August 18, 2015, she was walking on McKinley Avenue on her way to see her sons play football at a local park when a man (whom she later identified as Beagle) yelled at her from a small gold car. *Id.* at 36-38, 41, 43. She responded that she was "not that kind of girl." *Id.* at 41. At that point, the man pulled into a roadside parking lot and said that he just wanted directions. *Id.* at 41, 44. She testified that he appeared to her to be clean cut and harmless, not a thug or someone from the area. *Id.* at 41-42. But when she approached, he got out of the car, wrapped a towel around her, pinning her arms to her sides, and dragged her by her hair across the street to a secluded spot behind a nearby building. *Id.* at 42, 45-48, 69-70; State's Ex. M2. He hit her and demanded that she undress. (Tr. Vol. 1 at 42.) When she failed to comply, he pulled her pants (which were like leggings) off. *Id.* at 48-49. They tussled and fell to the ground where he inserted his unprotected penis into her vagina. *Id.* at 50. Then he rolled her over and put his penis in her anus. *Id.* at 50-51. After a time, he transferred it back to her vagina and ejaculated. *Id.* at 51. I.R. testified that during the whole rape, Beagle was screaming about how she was a whore, and he was going to fix all the whores. *Id.* at 51-52. After the assault, Beagle ran away and drove off. *Id.* at 52. I.R. testified that after the motorist who had testified had called the police for her, she was taken to a local hospital where she consented to undergo a sexual assault exam. *Id.* at 52-53.

{¶ 7}  I.R. identified Beagle as her attacker at trial. *Id.* at 54. She admitted she had never seen him before the rape in August 2015. *Id.* She also explained, however, that she picked him out of a photographic line-up when detectives came to see her in December 2015. *Id.* at 54-56.

{¶ 8}  The patrol officer who responded to the rape scene testified that he got a call to respond to McKinley Avenue around 7 p.m. on August 18, 2015. *Id.* at 15. When he arrived he found I.R., apparently extremely distraught, crying uncontrollably, shaking, and fearful of everything. *Id.* at 16. He testified that she told him that a clean-cut white male had stopped to ask her for directions and then sexually assaulted her. *Id.* at 17. He found a brown towel near the scene of the alleged rape. *Id.* at 19-20. He testified that he was familiar with women who engaged in prostitution in that area due to his duties as a patrol

No. 17AP-180

officer and that he did not recognize I.R. as being one of them. *Id.* at 29-30. He arranged for paramedics to take I.R. to a local hospital. *Id.* at 18.

{¶ 9} A nurse from the hospital to which I.R. was transported testified that although she observed no physical signs of injury on I.R., she obtained a sexual assault kit, which included vaginal and anal swabs. *Id.* at 139-42, 158. She also explained that, particularly since I.R. had birthed several children, it was not unusual to fail to find signs of injury from penetration and that I.R. had indicated that her assailant used spit as a lubricant. *Id.* at 139-41, 159.

{¶ 10} The detective who investigated the case testified that several months after the alleged rape, he obtained a lead on a potential suspect from the crime lab. *Id.* at 114. He created a photo array and had an administrator other than himself show the array to I.R. *Id.* at 114-16. I.R. selected Beagle's photograph. *Id.* at 116-17. The detective testified that he met with Beagle and obtained a DNA standard from him. *Id.* at 118.

{¶ 11} Finally, a lab scientist testified that she had compared the sperm sample taken from I.R.'s vagina with Beagle's DNA and concluded that Beagle was the source of sperm in I.R.'s vagina. (Jan. 26, 2017 Tr. Vol. 2 at 11, 21-22, filed May 4, 2017; State's Ex. D-2.) She testified that the likelihood that it could have been deposited by a different unrelated individual was 1 in 25.18 sextillion.[1] (Tr. Vol. 2 at 11, 21-22; State's Ex. D-2.)

{¶ 12} On January 27, 2017, the jury found Beagle guilty on all counts. (Jan. 27, 2017 Tr. Vol. 3 at 2-3, filed May 5, 2017; Jan. 27, 2017 Verdict Forms.) On February 6, 2017, the trial court also found that Beagle was a sexually violent predator as specified in the rape counts. (Feb. 6, 2017 Sentencing Tr. at 7-8, filed May 19, 2017.) These findings were based on the evidence produced at trial and on exhibits presented to the trial judge after the jury was discharged. *Id.* at 2-6. The exhibits showed that Beagle had previously been convicted of rape and kidnapping of a 15-year-old and found to be a sexual predator. (State's Exs. O-P.)

{¶ 13} After finding that Beagle was a sexually violent predator, the trial court immediately proceeded to sentencing. During sentencing, the State agreed that the kidnapping charge merged into the rape counts and elected that the trial court sentence on the rape counts. (Sentencing Tr. at 9.) The State submitted that the sexually violent

---

[1] 1:25,180,000,000,000,000,000,000.

No. 17AP-180

predator specifications required that Beagle be sentenced to three mandatory consecutive terms of at least 10 years to life in prison. *Id.* The trial court sentenced Beagle to a total of 30 years to life in prison. *Id.* at 13.

{¶ 14} Beagle now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 15} Beagle asserts two assignments of error for review:

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF KIDNAPPING AND RAPE AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> II. THE TRIAL COURT IMPROPERLY ADJUDICATED APPELLANT AS A SEXUALLY VIOLENT PREDATOR AS THAT ADJUDICATION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. DISCUSSION

### A. Standards for Manifest Weight and Sufficiency of the Evidence

{¶ 16} The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' * * *, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus.

{¶ 17} Sufficiency is:

> "[A] term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

*Eastley* at ¶ 11, quoting *Thompkins* at 386; *Black's Law Dictionary* 1433 (6th Ed.1990). "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have

No. 17AP-180

found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

> {¶ 18} By contrast:

> > Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict * * * . Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins* at 387; *Black's* at 1594. In manifest weight analysis "the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." *Thompkins* at 388, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

> 1. **First Assignment of Error – Whether Beagle's Convictions for Rape Were Insufficiently Supported by the Evidence or Against the Manifest Weight of the Evidence**

{¶ 19} In Ohio, the offense of rape is prohibited and defined in relevant part as follows:

> No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

R.C. 2907.02(A)(2). "Sexual conduct" is defined to include "vaginal intercourse between a male and female [and] anal intercourse." R.C. 2907.01(A). The statute further provides that "[p]enetration, however slight, is sufficient to complete vaginal or anal intercourse." *Id.*

{¶ 20} I.R. testified that Beagle wrapped her in a towel, pinning her arms to her sides, grabbed her by the hair, and dragged her behind a building where he hit her, pulled her pants off, and shoved his penis first in her vagina, then her anus, then her vagina again, finally ejaculating in her vagina. (Tr. Vol. 1 at 42, 45-51, 69-70.) This account is a

paradigmatic account of forcible rape. Viewing the evidence "in a light most favorable to the prosecution" and recognizing that we assume the truth of this account, we conclude that the evidence was sufficient to convict Beagle of rape. *Monroe* at ¶ 47.

{¶ 21} When considering manifest weight of the evidence, we note that the defense argued at trial that I.R. may have been a prostitute who was unhappy with Beagle for ejaculating in her and, therefore, falsely reported the rape. (Tr. Vol. 2 at 46-52.) Testimony from the motorist that I.R. did not appear disheveled and was crying without tears, supported this theory. (Tr. Vol. 1 at 97-101.) The defense argument was consistent with the fact that the physical exam found no internal injury to I.R.'s vagina or anus. *Id.* at 139, 158. Nor was the defense argument that the encounter was initially consensual contradicted by the presence of Beagle's sperm in I.R.'s vagina. (State's Ex. D-2.)

{¶ 22} However, I.R. testified that she had never worked as a prostitute and the patrol officer who testified explained that he was generally familiar with women who were engaged in prostitution in the neighborhood, and he did not recognize I.R. as one of them. (Tr. Vol. 1 at 29-30, 61, 82-83.) I.R.'s account at trial of what happened was consistent with the contemporaneous account relayed by the passing motorist for her to the 911 operator. *Compare* Tr. Vol. 1 at 42-43, 45-52, 69-70 *with* State's Ex. E at 0:42-3:12. That she had just been forcibly raped was also supported by her audible hysterical screaming and sobbing in the background of the 911 call and the distraught demeanor the patrol officer reported who had responded to the scene. (Tr. Vol. 1 at 16-17; State's Ex. E *in passim.*) I.R's account was also consistent with the physical details discovered at the scene. A towel was found near the alleged rape scene, consistent with I.R.'s claim that Beagle used it to restrain her. (Tr. Vol. 1 at 19-20; State's Ex. A-6.) The motorist observed that I.R. was not wearing shoes, which usually needs to happen for pants to come off. (Tr. Vol. 1 at 98.) There is also no serious question to Beagle's identity as I.R. identified Beagle from a photo line-up administered by an administrator other than the police detective who compiled it, and Beagle's sperm was found in a subsequent medical examination of I.R.'s vagina and it was identified by DNA analysis. (Tr. Vol. 1 at 114-17, 142; Tr. Vol. 2 at 11, 21-22; State's Ex. D-2.)

{¶ 23} Under these circumstances, we cannot conclude that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed

No. 17AP-180

and a new trial ordered." *Thompkins* at 387. As Beagle's conviction is neither insufficiently supported nor against the manifest weight of the evidence, we overrule his first assignment of error.

### 2. Second Assignment of Error – Whether the Finding that Beagle is a Sexually Violent Predator was Insufficiently Supported or Against the Manifest Weight of the Evidence

{¶ 24} A "sexually violent predator" is defined by statute:

> "Sexually violent predator" means a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses.

R.C. 2971.01(H)(1). The statute then lists a number of factors that "may be considered" as evidence a defendant is likely to "engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(2). These are:

> (a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.
>
> (b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.
>
> (c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.
>
> (d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.
>
> (e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.
>
> (f) Any other relevant evidence.

R.C. 2971.01(H)(2)(a) through (f).

{¶ 25} Beagle argues that the trial court should not have found him to be a sexually violent predator because only one of the factors applies to him. (Beagle Brief at 5.)

No. 17AP-180

However, we have found no precedent (and Beagle cites none) for the proposition that more than one factor must be present for a conviction. The final factor, "any other relevant evidence," has been used in at least one case in Ohio where *no* other specific factor was present. In *State v. Williams*, a defendant forced his way into the home of an 83-year-old widow, hit her with a hammer, threatened to kill her, robbed her, and raped her. 8th Dist. No. 80615, 2002-Ohio-4423, ¶ 4-11. In affirming the finding that the defendant in *Williams* was a sexually violent predator, the Eighth District Court of Appeals reasoned that although no specifically listed factors were present, considerable evidence showed that the defendant was a "psychopathic" type of sexual offender and thus there was a high likelihood that he would reoffend. *Id.* at ¶ 54-57.

{¶ 26} In Beagle's case, his crime against I.R., forcibly restraining and raping an individual previously unknown to him as she walked along a roadway, was a "sexually violent" offense that warrants viewing the evidence, as the trial court did, to protect the public. R.C. 2971.01(H)(1). In addition, in 1988, when Beagle was 24, he kidnapped and raped a 15-year-old. (State's Exs. P-O.) He pled guilty to those offenses and was sentenced to serve a total of 7 to 25 years. (State's Ex. P.) There is nothing in the statute to prohibit the trial court from viewing the evidence associated with this prior conviction as so weighty that, alone, R.C. 2971.01(H)(2)(a) would suffice for finding Beagle is a sexually violent predator.

{¶ 27} The finding that Beagle is a sexually violent predator is neither against the manifest weight of the evidence nor insufficiently supported by the evidence. His second assignment of error is overruled.

## IV. CONCLUSION

{¶ 28} The evidence introduced by the State against Beagle was sufficient to convict him of each of the three counts of rape and associated specifications. The convictions and the findings as to the specifications were also not against the manifest weight of the evidence. Both of Beagle's assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and HORTON, JJ., concur.

—————————